UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

SHAWN HOLCOMB,

       Plaintiff,

v.                           Civil Action No. 2:20-cv-00767

CNA MISTY POTTER,

       Defendant.


MEMORANDUM OPINION AND ORDER

       Pending is Defendant Misty Potter's Motion for Summary
Judgment (ECF No. 42), filed October 29, 2021.

I.    Background

       Plaintiff Shawn Holcomb ("Holcomb") alleges that on
December 12, 2018, while he was an inmate at St. Mary's
Correctional Center ("SMCC"), he was told to go down to the
medical unit where he was seen by defendant CNA Misty Potter
("Potter").  Holcomb Dep. 11-12, ECF No. 42-1.  Holcomb
testified that during this medical visit, Potter engaged with
him in a flirtatious manner and attempted to talk to him about
male and female genitalia.  Id. at 12-13.  Holcomb stated that
he did not respond to, or otherwise engage with, these
flirtatious comments.  Id. at 13.  Potter proceeded to attempt

to take Holcomb's blood pressure by placing a blood pressure cuff on his wrist.  <u>Id.</u>  Holcomb testified that the reading did not work and that he attempted to reach and remove the cuff from his arm.  <u>Id.</u>  When he did so, Potter slapped his hand.  <u>Id.</u>  Potter then finished the exam by moving the blood pressure cuff to Holcomb's bicep.  <u>Id.</u> at 15.  Thereafter, Holcomb saw the doctor and went back to his unit.  <u>Id.</u>

Potter's account of the incident was very different.  According to an incident report she completed at 1:12 PM on the day of the event, the incident transpired as follows:

> At approx noon, inmate Holcomb, Shawn OIS# 3557708 was in the chair beside the desk when I needed to get his blood pressure.  inmate Holcomb, Shawn OIS # 3557708 was trying to pinch my breast when i was attempting to place the blood pressure cuff on his arm.  I then smacked his hand, he kind of laughed and smirked.  Then I told inmate Holcomb, Shawn OIS# 3557708 to hold still so i could get blood pressure.  inmate Holcomb, Shawn OIS# 3557708 kept playing with the pulse oximeter and I had to move it to the other side of the desk.  inmate Holcomb, Shawn OIS# 3557708 was acting in a playful flirtatious way, I told him that i couldn't wait to get him away from my desk because i was done dealing with him.  End of report.

Potter Incident Rep., ECF No. 42-2.

A video of the interaction exists; however, it is shot from a distance and lacks sound.  ECF No. 46.  The video shows Holcomb and Potter sitting in chairs facing each other.  Potter

2

places a blood pressure cuff on Holcomb's left forearm.
Approximately one minute and eight seconds into the video,
Holcomb seems to move his left arm forward, but the viewer
cannot see how far his hand moves due to the placement of the
camera and Potter's left arm.  Potter then quickly smacks
Holcomb's left hand with her right.  Potter does not move away
from Holcomb, nor does she appear to call out for assistance.

According to Holcomb, on the same day that he had this
encounter with Potter, two corrections officers, Eric Harron
("Harron") and Dustin Wilson ("Wilson"), came to his dorm-style
cell and asked for him by name.  Holcomb Dep. 21.  The officers
then directed him "to stand up, face the wall, and prone out."
Id.  Holcomb testified that he complied with the officers'
instructions but that one of the officers "bounced [his] head
off the wall," sprayed him in the face with a chemical agent,
took him to the ground, and hit him in the back of the head.
Id. at 22.  Holcomb maintains that he remained compliant with
the officers throughout the incident.  Id.

Thereafter, Holcomb was transported to a holding cell,
given a shower, and then, within a few hours, was notified that
he had been written up for the incidents with Potter and the
corrections officers.  Id. at 23.

At 1:46 PM the same day, Wilson created an incident report in which he stated that at approximately 1:00 PM he was ordered by Captain Steve Kalinofski to put Holcomb in mechanical restraints and place him in a holding cell.  Wilson Incident Rep., ECF No. 42-3.  Per Wilson's report, Kalinofski's order "was due to [Holcomb] having sexually assaulted CNA Misty Potter."  Id.  According to Wilson, Holcomb initially acted as though he was going to comply but then "quickly turned toward [the officers] aggressively."  Id.  Wilson wrote that he gave Holcomb instructions to stop before Wilson drew his Oleoresin Capsicum projector and delivered "two to three half second bursts to [Holcomb's] forehead eyes and nose while simultaneously performing a take down."  Id.

On December 18, 2018, a disciplinary hearing was held at which Holcomb was found guilty of "Rape/Sexual Assault/Sexual Abuse/Sexual Acts (Sex acts)" related to the alleged incident with Potter.  Disciplinary Hearing Rep., ECF No. 42-4.  The evidence considered at the hearing included the "Disciplinary Incident Report," the testimony of Holcomb, the testimony of Potter, [1] and the video of the incident.  Id. at 3.  Based on the text of the hearing report, it appears that the considered

---

[1]     The court has not been provided with a copy of Potter's testimony and neither Holcomb or Potter has cited it.

Disciplinary Incident Report refers collectively to the incident reports written by Potter, Wilson, and Harron.

As a result of the guilty finding, Holcomb received 60 days of segregation and 60 days of lost privileges.  Id. at 4. According to the hearing report, Holcomb appealed the finding to both the warden and commissioner, but the finding was affirmed by both.  Id.

On November 20, 2020, plaintiff Shawn Holcomb filed this civil action against the West Virginia Division of Corrections and Rehabilitation ("WVDOCR"), Correctional Officer Dustin Wilson, Correctional Officer Eric Harron, and CNA Misty Potter.  Compl., ECF No. 1.  The complaint asserts five causes of action: (I) battery, (II) a violation of 42 U.S.C. § 1983, (III) "violation of policy and procedure," (IV) conspiracy to conceal wrongful conduct, and (V) deliberate indifference/outrageous conduct.  Id. at ¶¶ 14-36.

On September 27, 2021, by memorandum opinion and order, this court granted WVDOCR's motion to dismiss and dismissed it from the case.  ECF No. 40.  Since that date, Holcomb has voluntarily dismissed the claims against Eric Harron and Dustin Wilson.  ECF No. 53.  Accordingly, CNA Misty Potter is the only remaining defendant in this action.  The claims asserted against her consist of Count IV conspiracy to conceal

wrongful conduct and Count V deliberate indifference/outrageous
conduct.

## II. Legal Standard

Summary judgment is appropriate only "if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). "Material" facts are those necessary to
establish the elements of a party's cause of action. <u>Anderson</u>
<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see</u> <u>also</u> <u>News</u>
<u>& Observer Publ'g Co. v. Raleigh-Durham Airport Auth.</u>, 597 F.3d
570, 576 (4th Cir. 2010). A "genuine" dispute of material fact
exists if, in viewing the record and all reasonable inferences
drawn therefrom in a light most favorable to the non-moving
party, a reasonable fact-finder could return a verdict for the
non-moving party. <u>Anderson</u>, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts .
. . must be viewed in the light most favorable to the party
opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S.
654, 655 (1962). A party is entitled to summary judgment if the
record, as a whole, could not lead a rational trier of fact to
find for the non-moving party. <u>Williams v. Griffin</u>, 952 F.2d
820, 823 (4th Cir. 1991). Conversely, summary judgment is
inappropriate if the evidence is sufficient for a reasonable

fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.

### III. Analysis

#### A. <u>Conspiracy to Conceal Wrongful Conduct</u>

Count IV of Holcomb's complaint alleges that Potter conspired with corrections officers Wilson and Harron "to write incident reports that falsified" the events described in the complaint.  Compl. ¶ 29.

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  Syl. Pt. 3, <u>Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints</u>, 801 S.E.2d 443 (W. Va. 2017) (quoting Syl. Pt. 8, <u>Dunn v. Rockwell</u>, 689 S.E.2d 255 (W. Va. 2009)).  Civil conspiracy is not an independent basis for recovery but instead a doctrine for assigning liability to "people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)."  <u>Id.</u> at Syl. Pt. 4 (quoting Syl. Pt. 9, in part, <u>Dunn</u>, 689 S.E.2d 255).

In addition to proving an underlying tort, a plaintiff proceeding on a civil conspiracy claim "must produce at least

7

circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement."  Jane Doe-1, 801 S.E.2d at 476.

Potter contends that Holcomb's conspiracy claim fails as a matter of law on two grounds: (1) there is no tort underlying the alleged conspiracy, and (2) Holcomb has failed to produce evidence showing that Potter and the corrections officers shared an objective or mutual agreement.  ECF No. 43, at 10.

In his response, Holcomb very briefly argues that his conspiracy claim should be heard by a jury, stating:

> There can be no dispute that Defendants' conduct resulted in plaintiff being sprayed, beaten and suffering a loss of privileges and punitive segregation.  A jury could certainly infer that the false allegations and false incident reports by Potter and Wilson were a concerted effort to cover up their wrongful conduct.

ECF No. 47, at 9.

While it is not entirely clear whether Holcomb is asserting that the tort underlying the conspiracy claim is battery, Holcomb's loss of privileges, or the filling of "false reports," the court concludes that it need not make a finding on the issue.

Holcomb has presented no evidence upon which a fact-finder could conclude that Potter formed an agreement with either of the corrections officers.  In fact, Holcomb has failed to present any evidence that Potter ever communicated with either corrections officer at all, before or after he was allegedly beaten by the officers.

Inasmuch as Holcomb has failed to present "at least circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement," Jane Doe-1, 801 S.E.2d at 476, the court finds that Potter is entitled to summary judgment on Count IV of the complaint.

B. Deliberate Indifference/Outrageous Conduct

Count V of Holcomb's complaint alleges that Potter's incident report was a "false complaint against plaintiff." Compl. ¶ 32.  By filing the false report, Holcomb asserts that Potter violated Holcomb's Eighth Amendment rights and placed him in danger.  Id. at ¶ 35.  In the alternative, the complaint asserts that "Potter acted in an outrageous manner by writing the false report" and that she "knew that writing the false report could result in plaintiff suffering severe emotional distress as well as potential physical harm."  Id. at ¶ 36.  The

court addresses the claims of deliberate indifference and outrageous conduct separately.

i.   Deliberate Indifference

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and thus requires "reasonable protection against unreasonable risk of harm in a prison environment." <u>Hite v. Leeke</u>, 564 F.2d 670, 673 (4th Cir. 1977).

To prevail on a § 1983 claim for deliberate indifference under the Eighth Amendment, a plaintiff must show (1) that the injury suffered was "objectively, sufficiently serious," and (2) the responsible official acted with deliberate indifference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 829, 834 (1994) (internal quotations omitted).  To prove the second prong of deliberate indifference, the plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that the official actually drew the inference.  <u>Id.</u> at 837.

"[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official

acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842.

Potter submits that "Plaintiff has produced no evidence that Ms. Potter knew or even should have known that the filing of her report would lead to a use of force against him." ECF No. 43, at 8. She argues that "[a]n expected result of filing a report of sexual assault against an inmate is prison disciplinary charges." Id. Inasmuch as "[t]he application of physical force is not a prescribed disciplinary measure" for a report of sexual assault, and because Holcomb has failed to produce any evidence that Potter knew or should have known the corrections officers' use of force against Holcomb would be the result of her report, Potter argues that the deliberate indifference claim must fail. Id.

In his response, Holcomb concedes that he has the burden of providing "evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." ECF No. 47, at 7 (quoting Danser v. Stansberry, 772 F.3d 340, 347 (4th Cir. 2014)). He goes on to submit that "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 8 (quoting Farmer, 511 U.S. at 842). In this case, he argues that "a jury could infer that the defendant

Potter knew of the substantial risk of harm that plaintiff faced as a result of her false allegations of sexual assault. Defendant also would have known that plaintiff would be subject to punitive action as a result of her false complaint." <u>Id.</u>

Based on Holcomb's response, the court finds it necessary to examine the deliberate indifference claim as alleging two different harms: (1) the punitive harm Holcomb suffered in the form of segregation and loss of privileges and (2) the physical and emotional harm he suffered as a result of the encounter with the corrections officers.

First, to the extent that Holcomb bases his Eighth Amendment deliberate indifference claim on his segregation and loss of privileges, <u>see</u> ECF No. 47, at 8, the court finds that these claimed injuries alone are not "objectively, sufficiently serious" enough to satisfy the first prong of the deliberate indifference analysis. <u>Farmer</u>, 511 U.S. at 829.

Under the objective prong of deliberate indifference, a deprivation or injury is sufficiently serious if it "prove[s] extreme – thus posing either a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such serious harm." <u>Campbell v. Florian</u>, 972 F.3d 385, 393 (4th Cir. 2020) (internal quotation marks omitted).

Holcomb does not specifically aver in his complaint, or in his deposition, that he suffered physical or emotional harm as a result of his segregation or lost privileges.  Without making a showing of serious physical and/or emotional injuries, his § 1983 claim under the Eighth Amendment cannot stand.  See Campbell, 972 F.3d at 393; Beverati v. Smith, 120 F.3d 500, 504 n.5 (4th Cir. 1997) (noting that the plaintiffs' "failure to press an Eighth Amendment claim predicated on the conditions of their confinement in administrative segregation no doubt stems from their recognition that such a claim must fail, if for no other reason than that they made no showing that the conditions resulted in serious physical or emotional injuries or the grave risk of such harm").

Second, to the extent that Holcomb bases his Eighth Amendment deliberate indifference claim on the physical and emotional harm he endured as a result of his encounter with Wilson and Harron, the court finds Holcomb has submitted sufficient evidence that would warrant a fact-finder to find that he suffered a sufficiently serious injury to satisfy the first prong of deliberate indifference.  See Holcomb Dep. 22, 27–29  (testifying that one of the officers "bounced [his] head off the wall," sprayed him in the face with a chemical agent, and hit him on the back of the head; that he received injuries

on his head and chemical burns to his face, thighs, testicles, and stomach; and that he continues to suffer emotional effects including a paranoia of police and other individuals).

Nevertheless, Holcomb has failed to make a showing as to the second prong of deliberate indifference, that is that Potter was subjectively aware of the risk of harm.  He did not provide the court with evidence suggesting that incident reports of this nature frequently result in physical harm to inmates, nor did he cite to any evidence showing that Potter, in particular, was aware that Holcomb would be subjected to physical harm as a result of her report.  Aside from his own deposition testimony, in which he states that he believes that his beating was the result of Potter's report, see Holcomb Dep. 16, 26, Holcomb cites to no evidence showing that Potter herself was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that Potter drew the inference.  Farmer, 511 U.S. at 837.

Accordingly, no reasonable fact-finder could find for Holcomb on his deliberate indifference claim, and Potter is entitled to judgment as a matter of law on that claim.

ii.   Outrageous Conduct

Pursuant to West Virginia law, to prevail on a claim of outrage or intentional infliction of emotional distress, a plaintiff must plead and prove:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl Pt. 3, Travis v. Alcon Lab'ys, Inc., 504 S.E.2d 419, 421 (W. Va. 1998).

Potter submits that Holcomb has failed to produce evidence of the second and third elements.  ECF No. 43, at 9. Potter does not appear to contest the first and fourth elements at the summary judgment stage.  The court nevertheless notes that it has an obligation to determine whether the alleged conduct of the defendant "may reasonably be regarded as so extreme and outrageous as to permit recovery."  Travis, 504 S.E.2d at 427 (quoting Restatement (Second) of Torts, § 46, cmt. (h)).

Under West Virginia law, conduct is actionable under the tort of outrage only where it is "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Id. at 425. Such conduct "'must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct.'" Id. (quoting Grandchamp v. United Air Lines, Inc., 854 F.2d 381, 383 (10th Cir. 1998)).

Here, the court cannot conclude that Potter's alleged conduct may reasonably be regarded as so extreme and outrageous as to constitute the alleged tort. Potter's report simply makes an accusation that Holcomb was "trying" to pinch her breast and "acting in a playful flirtatious way." See Potter Incident Rep. 1. While a false report of this nature would certainly be "unreasonable, unkind or unfair," it is not the kind of conduct that can reasonably be described as "so extreme and outrageous as to exceed the bounds of decency." Travis, 504 S.E.2d at 424. On this basis alone, the court finds that Potter is entitled to summary judgment on Holcomb's outrageous conduct claim.

Because the first element of the outrageous conduct claim has not been met, the court need not address the remaining elements. Nevertheless, even if Potter's allegedly false report were deemed "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," id. at 421, the

court also finds that Holcomb has failed to produce evidence supporting the second element of the tort.

As to the second element, which requires the defendant to have "acted with the intent to inflict emotional distress" or "acted recklessly when it was certain or substantially certain emotional distress would result from his conduct," id., Potter asserts that "Plaintiff has failed to produce evidence that Ms. Potter knew or had information by which she should have known that her filing of a report would lead to the use of force which caused the Plaintiff's alleged emotional distress."  ECF No. 43, at 9.  In response, Holcomb argues that "any person would be substantially certain that a false sexual assault allegation would cause the accused to suffer severe emotional distress."  ECF No. 47, at 5.

Whether a defendant acted intentionally or recklessly in inflicting emotional distress is usually a question of fact for the jury.  Travis, 504 S.E.2d at 429.  Nevertheless, as discussed above, the court notes that Holcomb failed to produce any evidence which suggests that Potter knew or should have known that the filing of her report, even if false, was substantially certain to result in the physical and emotional harm Holcomb allegedly suffered at the hands of the corrections

officers.  Holcomb's claim cannot be sustained upon conclusory statements alone.

In light of the foregoing, the court concludes that Potter is entitled to summary judgment on Holcomb's outrageous conduct claim.

## IV.  Conclusion

Accordingly, the court ORDERS that Defendant Misty Potter's Motion for Summary Judgment (ECF No. 42) be, and hereby is, granted.

The Clerk is requested to transmit this order to all counsel of record and to any unrepresented parties.

ENTER:  January 26, 2022

John T. Copenhaver, Jr.
Senior United States District Judge